IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | | |
|---|---|---|
| ALFRED SMITH, | ) | Cause No. CV 07-03-GF-SEH-RKS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| McDONALD, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On July 6, 2006, Plaintiff Alfred Smith filed this action for civil rights violations, pursuant to 42 U.S.C. § 1983.  Mr. Smith is a state prisoner proceeding pro se.  This court had jurisdiction under 28 U.S.C. § 1331.

**I. Preliminary Screening**

Pursuant to the federal statutes governing proceedings in forma pauperis and proceedings by prisoners, federal courts must engage in a preliminary screening of cases to assess the merits of the claims. 28 U.S.C. §§ 1915(e)(2), 1915A(a); 42 U.S.C. § 1997e(c)(1); *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).  The court must liberally construe pro se pleadings.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The court must also identify cognizable claims, or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted, or if the complaint seeks

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend.  *Lopez*, 203 F.3d at 1127.  The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts."  *Id.* (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

## II.  Mr. Smith's Allegations

Mr. Smith alleges several violations of his right to due process in connection with disciplinary and reclassification proceedings.

On January 11, 2006, Mr. Smith was incarcerated at Crossroads Correctional Center in Shelby, Montana.  Mr. Smith alleges that, on that date, he was removed from the general population and reclassified to administrative segregation and notified that he would have a hearing within 72 hours of the notice, but no hearing was held.  *See* Compl. (doc. 1) at 6; Ex. A at 1, Ex. B at 1-3, Ex. C at 1.[1]  Smith also alleges that he was served with a Disciplinary Infraction Report and Notice of Hearing on January 11, but the description of the alleged violation was too vague to enable him to mount a defense and was identical to the notice given to another inmate.  Compl. at 10; Compl. Ex.

---

[1]  Complaint page numbers refer to Mr. Smith's numbering in the bottom right-hand corner of each page of the Complaint.  Exhibit page numbers refer to the ordinal page of the cited exhibit, e.g., Compl. Ex. A at 1 is the first page of Exhibit A, regardless of other page numbering.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

D at 1.

Mr. Smith alleges that he had a disciplinary hearing on January 18, 2006.  The hearing was interrupted by a shift supervisor, Mr. Varnum, who argued with the hearings officer, Lt. Christaens – a subordinate of Mr. Varnum's – over Mr. Smith's guilt.  After Mr. Varnum left, Lt. Christaens found Mr. Smith not guilty.  Compl. at 12-13; Compl. Ex. F at 1.

About three hours later on the same day, Mr. Smith was advised that his disciplinary hearing would be reconvened based on new evidence.  Compl. Ex. G at 1.  The new hearing was conducted by a different hearings officer, Lt. Stuart, but Lt. Christaens was present and described her role as "supervisory."  Mr. Smith presented the same evidence that he had presented earlier in the day.  Lt. Stuart read aloud to Mr. Smith the investigative report of Mr. Varnum, which had not been available at the prior hearing.  The report relied on several statements by confidential informants. Lt. Stuart found Mr. Smith guilty.  Compl. at 14-15.  A sanction of 15 days' disciplinary detention was imposed.  Mr. Smith's Disciplinary Hearing Decision shows the sanction is crossed out and the phrase "no sanctions" is written in above it.  Compl. Ex. I at 1.  Mr. Smith's appeals were unsuccessful.  *See* Compl. at 17-19; Compl. Ex. J at 1, Ex. M at 1-4, Ex. N at 1.

On February 8, 2006, Mr. Smith was "reclassified" to serve six months in administrative segregation, "[d]ue to the severity" of the disciplinary offense.  Compl. at 20; Compl. Ex. O at 1-3.

Mr. Smith also contends that, during his placement in segregation at Crossroads from January 11 to April 17, 2006, the light in his cell was turned on twenty-four hours a day.  Compl. at 22; Compl. Ex. Q at 1. Mr. Smith was advised that the light was a "low level candle power" light and that it had to remain on so that guards could see inside the cell at all times.  Compl. Ex. Q at 2-3.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

On April 17, 2006, Mr. Smith was transferred from Crossroads to Montana State Prison. There, he was reclassified to a newly created unit, the Security Housing Unit ("SHU").  He states that he was told he would have an opportunity to present evidence but contends that he was effectively denied this opportunity because the decision had already been made before he had a hearing.  Compl. at 23.   Mr. Smith's appeals were denied.  *Id*. at 25.

Finally, Mr. Smith asserts that he was "repeatedly accused" of gang activity and asks that the credibility of the confidential informants be examined and tested.  *Id*. at 26.

For his relief, Mr. Smith seeks compensatory and punitive damages, expungement of his disciplinary record, return to the general population, and any other relief to which he may be entitled. Compl. at 8, 11, 14, 16-19, 21-22, 24, 26-27.

**III. Analysis**

Mr. Smith fails to state a claim on which relief may be granted.  His Complaint should be dismissed with prejudice.

**A. Due Process**

To state a claim for a due process violation, a plaintiff must show (1) that he had a protected liberty interest, and (2) that he was deprived of that interest without adequate due process.  If there is no liberty interest at stake, the Constitution does not require any process, and the second element becomes irrelevant.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215,  223-24 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569 (1971); *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).

**1. Liberty Interest**

In the prison setting, a liberty interest is recognized and protected only if state officials or

employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or (2) impose a hardship that is atypical and significant in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).   Whether a hardship is "atypical and significant" depends on three factors:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (citing *Sandin*, 515 U.S. at 486-87).   *See also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (holding that inmate was not deprived of a liberty interest where he was placed at a higher security level than indicated by calculation under controlling prison regulations).

In Mr. Smith's case, the threshold requirement for showing a liberty interest is not met.[2]   Mr. Smith is serving at least one ten-year term for robbery, perjury, criminal mischief, and a probation violation on a burglary charge.   *See* CON Network, http://app.mt.gov/conweb. "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum*, 427 U.S. at 225.   Consequently, placement in any part

---

[2]   It is well-established that inmates have no protected liberty interest in their classification status or in their access to rehabilitative programs or programs they need for parole eligibility. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Duffy v. Riveland*, 98 F.3d 447, 457 (9th Cir. 1996); *Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989).   However, where reclassification is undertaken as a sanction for disciplinary violations, transfer from one custody status to another might "work a major disruption in the inmate's environment." *Wilkinson*, 545 U.S. at 223.   For that reason, the question is not simply whether prison officials have discretion to reclassify the inmate, but whether they may reclassify as a disciplinary sanction.   A somewhat greater burden is imposed on prison officials who are disciplining inmates "for specific, serious misbehavior," *id*. at 228, than on officials who are only deciding where to put them, apart from any disciplinary sanction.   *Id*. at 228-29 (holding that, where decision involves prison officials' experience and State's interest in safety of prison staff and inmates, lesser due process protections are appropriate).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

of a Montana prison would not affect the sentence in an unexpected manner.  The first prong of the *Sandin* test for a liberty interest is not met.

The second prong of the *Sandin* test also is not met.   Mr. Smith's six-month placement in administrative segregation did not impose an "atypical and significant" hardship upon him. Placement in segregation falls within the terms of confinement ordinarily contemplated when a prison sentence is imposed, *see Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986), and so "comported with the prison's discretionary authority."

While a six-month segregation is longer than the term at issue in *Sandin*, it is not atypical or significant in comparison to inmates in protective custody or inmates whose placement has not yet been determined.  In *Ramirez*, the court held it could not determine from the record whether a two-year term in segregation gave rise to a liberty interest.  The court did not reach a conclusion, but it necessarily found that a two-year term was equivocal – and Mr. Smith's term is only one-fourth as much.  Moreover, in *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court held that placement in a supermax prison, where lights are on 24 hours a day, and exercise is permitted only for one hour per day in a small indoor room, probably would not, under *Sandin*, give rise to a liberty interest.  *See id*. at 223-24.  The crucial facts in *Wilkinson* were (1) that inmates were deprived of "almost all human contact, even to the point that conversation is not permitted from cell to cell;" (2) that placement was for an indefinite period of time, with yearly review; and (3) that inmates lost their parole eligibility.  *Id*.  The facts alleged by Mr. Smith are not remotely comparable.  Mr. Smith's reclassification to segregation placed him in conditions that are well within prison officials' discretion to impose.  Finally, there is no suggestion that Mr. Smith's placement will inevitably

affect the length of his sentence; *Sandin* itself precludes consideration of the effect of Mr. Smith's placement on his parole prospects as "too attenuated." *See Sandin*, 515 U.S. at 487.

Mr. Smith cannot show that he had a liberty interest in avoiding placement in administrative segregation for six months. Therefore, it is irrelevant whether he received adequate due process protections, because he was not constitutionally entitled to due process.

### 2. Due Process

Even if Mr. Smith had a liberty interest, he received all the process that was due to him. First, *Wilkinson* clarified that the process due upon an inmate's placement in a supermax prison is less than the process due in connection with a prison disciplinary hearing. *See Wilkinson*, 545 U.S. at 228-29 (requiring prison officials considering an inmate's security placement to meet lower standard applicable to parole officials in determining whether to grant parole) (citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979)). The Court endorsed the classification procedure used by the State of Ohio as sufficient to provide due process within the meaning of the Fourteenth Amendment. *See id.* at 216-17, 225.

Second, even if Mr. Smith was entitled to the full panoply of due process protections provided where an inmate is deprived of a liberty interest as discipline, his hearing complied with the requirements of the Fourteenth Amendment. Those requirements include "advance written notice of the claimed violation and a written statement of the factfinder[] as to the evidence relied upon and the reasons for the disciplinary action taken," *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974); an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,"

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

*id.* at 566; and the assistance of a fellow inmate or a staff member if he is illiterate or if the issues are especially complex, *id.* at 570.  He is also entitled to a finding of guilt that is supported by "some evidence," a standard which is met if "there is *any* evidence in the record that *could* support the conclusion reached" by the fact-finder.  *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added).  Finally, he is entitled to an impartial fact-finder.  *See, e.g.*, *Edwards v. Balisok*, 520 U.S. 641, 647 (1997) ("[t]he due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence.").

Mr. Smith's Complaint and exhibits plainly show that all of those requirements were met.  While Mr. Smith alleges that the notice of the charges was too "vague" to permit him to defend himself, the charge was clearly set forth: he was accused of conspiring or contributing to attempted murder, assaults on staff, and riotous activity that occurred in Crossroads C-pod on January 7, 2006.  *See* Compl. Ex. D at 1.  The identity of confidential informants need not be disclosed.  *Toussaint*, 801 F.2d at 1101.  The inmate has no right to cross-examine witnesses.  *Wolff*, 418 U.S. at 567-68; *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *overruled on other grounds by Sandin*, 515 U.S. at 483-84.  The credibility of the witnesses and evidence is for prison officials, not this Court or a jury, to decide.  *Hill*, 472 U.S. at 455.  Neither Lt. Christaens nor Lt. Stuart were partial, because neither was involved in the investigation or charging process.  So long as the constitutional requirements are observed, even a prison's violation of its own regulations does not offend due process.  *Walker*, 14 F.3d at 1419-20.  Mr. Smith received constitutional due process.

**C. Lights On**

Mr. Smith's Exhibit Q shows that the light that was left on in his cell was a low candle-power light.  While "[t]here is no legitimate penological justification for requiring for requiring [inmates] to suffer physical and psychological harm by living in constant illumination," <u>Keenan v. Hall</u>, 83 F.3d 1083, 1090 (9th cir. 1996) (quoting *Lemaire v. Maass*, 745 F.Supp. 623, 636 (D.Or. 1990), dimmed 24 hour lighting does not rise to the level of a constitutional violation, and is a condition likely present in "most solitary confinement facilities." *Wilkinson*, 545 U.S. at 211.  Mr. Smith does not claim the lights were bright or glaring. There was no Eighth Amendment violation.

## IV. Conclusion

Mr. Smith cannot state a due process claim.  He did not have a liberty interest in remaining in the general population, and even if he did, he was given all the process that could have been due. Nor can he state an Eighth Amendment claim based on the lighting conditions in his cell.  The Complaint should be dismissed with prejudice.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1.  Mr. Smith's Complaint should be DISMISSED WITH PREJUDICE.

2.  The docket should reflect that his filing of this action counts as one strike against him for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(g).

3.  The District Court should CERTIFY, pursuant to Fed. R. App. P. 24(a)(3), that any appeal from this disposition would be taken in bad faith.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

States Magistrate Judge upon the Plaintiff.  Plaintiff is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days[3] after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

 Mr. Smith must immediately advise the Court of any change in his mailing address.

DATED this 8th day of May, 2007.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge

---

[3]  In prisoner cases, this Court extends the time to object to twenty days in order to take into account the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10